IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES McGARRY, II, KATHY McGARRY,
JAMES McGARRY, II, next friend of
BRITTANY McGARRY, a minor and
BRITTANY McGARRY, in her own right
and JAMES McGARRY, II, next friend
of JAMES McGARRY, III, a minor and
JAMES McGARRY, III, in his own right,

      Plaintiffs,

v.                               Civil Action No. 5:09CV68
                                         (STAMP)
McELROY COAL COMPANY,
d/b/a McELROY MINE,
CONSOL ENERGY, INC.,
CONSOLIDATION COAL COMPANY
and JOHN DOE MANUFACTURER,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND**

I.  Background

The above-styled civil action is before this Court as a result of a notice of removal by the defendants, in which the defendants assert that federal jurisdiction is pursuant to 28 U.S.C. § 1332. The plaintiffs commenced this civil action in the Circuit Court of Marshall County, West Virginia, alleging that plaintiff James McGarry, II, was injured in the course of his employment. Following removal of the action to this Court, the plaintiffs filed a motion to remand to which the defendants did not respond. For the reasons set forth below, the plaintiffs' motion to remand is granted.

II. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. Id.

III. Discussion

For the purposes of diversity of citizenship and removal jurisdiction, a corporation is deemed to be a citizen of two states: the state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The Fourth Circuit has applied two tests[1] in determining a corporation's

---

[1] The most recently developed test to be applied by courts to determine the citizenship of a corporation is the "total activities" test. This test takes into account all aspects of the corporation's business, including where its operations are located, where it supervises its business and where it employs persons and conducts its business. See e.g. J.A. Olson Co. v. City of Winona, 818 F.2d 401, 412 (5th Cir. 1987); White v. Halstead Indus., Inc., 750 F. Supp. 395, 397 (E.D. Ark. 1990). This test is considered a hybrid of the "nerve center" and "place of operations" tests and

2

principal place of business, but has "endorsed neither to the exclusion of the other." Peterson v. Cooley, 142 F.3d 181, 184 (4th Cir. 1998) (citing Mullins v. Beatrice Pocahontas Co., 489 F.2d 260, 262 (4th Cir. 1974) (per curiam)). The first test, the "nerve center" test, "makes the 'home office,' or place where the corporation's officers direct, control, and coordinate its activities, determinative." Mullins, 489 F.2d at 262. The second test, or the "place of operations" test, looks instead to the place where the bulk of corporate activity takes place," id., and considers such factors as "where the corporation is most visible, where it has the most contacts with the public, where the corporation believes it is a citizen, where business operations [are] carried out and where it employs people." Frontier Energy Corp. v. Broda, 882 F. Supp. 82, 84 (N.D. W. Va. 1995) (citing Northeast Nuclear Energy Co. v. Gen. Elec. Co., 435 F. Supp. 344, 346 (D. Conn. 1977)).

In applying these two tests, courts have noted that the nerve center analysis is best suited for "cases where there is no clear center of corporate activity because the corporate enterprise is 'far flung and varied.'" AFA Enter., Inc. v. Am. States Ins. Co., 842 F. Supp. 902, 906 (S.D. W. Va. 1994) (quoting Mitchell v. Monongahela Power Co., 602 F. Supp. 756, 758-59 (S.D. W. Va.

---

considers all aspects of a corporation's business, including where its operations are located, where it supervises its business and where it employs persons and conducts its business. Indus Tectonics v. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990).

3

1985)). Cases have further noted that "[t]he nerve center test should be used only when no state contains a substantial predominance of the corporation's business activities." <u>Indus. Tectonics, Inc. v. Aero Alloy</u>, 912 F.2d 1090, 1094 (9th Cir. 1990).

The question that confronts the Court in this case is whether McElroy should be considered a citizen of the state of West Virginia, the location of their mining operation, or Pennsylvania, which McElroy purports to maintain its principal place of business. A court in the Northern District of West Virginia has addressed this issue in a similar case. In <u>Frontier Energy Corp. v. Broda</u>, 882 F. Supp. 82, 84 (N.D. W. Va. 1995), District Judge Irene M. Keeley applied the "place of operations" test to a set of facts substantially similar to those in the current action. In that case, Frontier Energy Corp. ("Frontier"), an owner of oil and gas wells in West Virginia, argued that its principal place of business was located in Connecticut because the major decision and policy making for the business took place there. <u>Frontier Energy</u>, 882 F. Supp. at 84. However, the greater part of the corporation's assets were located in West Virginia and it derived most of its income from its West Virginia operations. <u>Id.</u>

Upon analyzing the facts of the case, Judge Keeley found that Frontier was not a "far flung" operation, and consequently held that the "place of operations" test was appropriate to determine Frontier's principal place of business. <u>Id.</u> In applying this test, Judge Keeley first recognized that Frontier was most visible

4

and had the most contact with the public in Connecticut, which it considered its home.  Id.  Additionally, Judge Keeley recognized the Frontier's employees were evenly split between West Virginia and Connecticut, that Frontier's bank accounts were held in Connecticut, that taxes were paid and returns were filed in Connecticut, and that all of the corporate records and meetings were held in Connecticut.  Id. at 35.  However, Judge Keeley indicated that "[Frontier's] corporate purpose, to produce oil and gas, [was] achieved in West Virginia, the greater part of the corporate assets [were] in West Virginia and the corporate income [was] derived from West Virginia's resources."  Id.  Judge Keeley further noted that "Frontier [was] registered to do business in West Virginia, but not in Connecticut."  Id.  Accordingly, Judge Keeley held that Frontier had its principal place of business in West Virginia and, therefore, was a West Virginia citizen.

In their motion to remand, the plaintiffs argue that complete diversity does not exist in this action because defendant McElroy Coal Company d/b/a McElroy Mine ("McElroy") is a West Virginia citizen.  Specifically, the plaintiffs contend pursuant to the "place of operations" test, McElroy's place of operation is in Marshall County, West Virginia, where it operates the McElroy Mine.

In another mine case, Moore v. Consolidation Coal Co., No. 5:03CV53, slip. op. at 11 (N.D. W. Va. Dec. 30, 2003), this Court determined that McElroy's principal place of business is West Virginia.  Also, as this Court determined in Billiter v. John Doe,

Nos. 5:95CV108 and 5:95CV146, slip op. at 10 (N.D. W. Va. July 13, 1999) and reemphasized in <u>Moore</u>:

> [t]his Court concedes that McElroy considers its home in Pennsylvania, that its bank accounts are held in Pennsylvania, that its general sales office and advertising and sales promotion departments are located in Pennsylvania, that its tax returns are prepared and filed in Pennsylvania, and that its administrative accounting and corporate records are in Pennsylvania. Further, it is undisputed that McElroy's officers and directors are located in Pennsylvania. However, the plaintiffs have asserted that all of the corporate income is derived in West Virginia. McElroy has presented no evidence to refute plaintiffs' assertions that the bulk, if not all, of its mining operations are in West Virginia, and this Court notes that the burden to produce competent evidence to establish diversity jurisdiction is upon McElroy.
>
> Accordingly, this Court finds that pursuant to the "place of operations" test because all of McElroy's assets are located in West Virginia and because all of McElroy's corporate income is derived from West Virginia, its principal place of business is West Virginia.

<u>Moore</u>, No. 5:03CV53, slip op. at 8-9 (quoting <u>Billiter</u>, Nos. 5:95CV108 and 5:95CV146, slip op. at 10).

In <u>Stache v. Consolidation Coal Co.</u>, No. 5:98CV141, slip op. at 11 n.9 (N.D. W. Va. July 13, 1999), this Court noted that such findings are limited to the time that the action commences, as this is the time upon which the jurisdictional inquiry must focus. However, the defendants have presented no evidence demonstrating that a change in these factual findings had occurred by the time this action commenced. Thus, this Court must find, for the same reasons articulated in <u>Moore</u>, that McElroy failed to meet its burden of proving that jurisdiction is proper. Therefore, this Court concludes, as it did in <u>Moore</u>, that: (1) because McElroy is

6

not a "far flung" corporation, the "place of operations" test is appropriate to determine its principal place of business; (2) because all of McElroy's corporate assets are located in West Virginia and because its corporate income is derived from West Virginia sources, McElroy's principal place of business is West Virginia.

IV. <u>Conclusion</u>

For the reasons stated above, the plaintiffs' motion to remand is hereby GRANTED. Accordingly, it is ORDERED that this case be REMANDED to the Circuit Court of Marshall County, West Virginia. It is further ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the Circuit Court of Marshall County, West Virginia. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

DATED: August 27, 2009

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE